Larry Zerner (SBN 155473
Law Offices of Larry Zerner
1801 Century Park East, Ste. 2400
Los Angeles, CA 90067
(310)773-3623
Email: Larry@ZernerLaw.com

Attorneys for Defendant Zeus Networks, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| International Content Creators, Inc, a Nevada Corporation,<br><br>                         Plaintiff,<br><br>v.<br><br>Zeus Networks, LLC, a Delaware Limited Liability Company, and DOES 1-10,<br><br>                         Defendants. | Case No.: 2:23-cv-9319-MCS-SK<br><br>ANSWER OF ZEUS NETWORKS LLC TO COMPLAINT<br><br>COUNTER-CLAIM BY ZEUS NETWORKS, LLC FOR DECLARATORY RELIEF AGAINST INTERNATIONAL CONTENT CREATORS, INC. |

Defendant ZEUS NETWORKS, LLC, hereby file their Answer and Affirmative Defenses to Plaintiff's Complaint and state as follows:

1.    Defendant admits that this is a complaint brought against it for trademark infringement and that Plaintiff is seeking an injunction and denies the remaining allegations of Paragraph 1.

## NATURE OF THE ACTION

2.    Defendant admits that this is a civil action for trademark infringement, unfair competition and related state and common law claims and denies the remaining allegations of Paragraph 2.

## PARTIES

3.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 and denies them on that basis.

4.     Defendant admits the allegations of Paragraph 4.

5.     To the extent that the allegations in Paragraph 5 are legal arguments or conclusions, they require no answer. To the extent that an answer is required, Defendant denies the allegations in Paragraph 5.

<u>JURISDICTION AND VENUE</u>

6.     Defendant admits that the action arises under 15 U.S.C. §§1051 *et seq.* and has jurisdiction over the claims.

7.     Defendant admits the allegations of Paragraph 7.

8.     Defendant admits the allegations of Paragraph 8.

<u>FACTS</u>

9.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 and denies them on that basis.

10.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 and denies them on that basis.

11.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 and denies them on that basis.

12.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 and denies them on that basis.

13.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 and denies them on that basis.

14.     Defendant admits that it aired a television series titled "Baddies ATL" in May 2021 and that it aired a television series titled "Baddies South" in June 2022.  Defendant denies the remaining allegations of Paragraph 14.

15.     Defendant denies the allegations of Paragraph 15.

16.  Defendant admits that it filed a trademark application for the name Baddies on June 9, 2022 and denies the remaining allegations of Paragraph 16.

17.  Defendant admits that Plaintiff filed an opposition before the TTAB on June 7, 2023 and that Defendant filed an abandonment of its application on September 15, 2023.  Defendant further admits that the TTAB issued a decision on September 22, 2023.  Defendant denies the remaining allegations of Paragraph 17.

18.  Defendant denies that it continues to use the Baddies Mark as all of the examples attached to the complaint show that Defendant does not just use the word "Baddies" but instead is using names such as "Baddies East," "Baddies West," and "Baddies South" and on that basis denies the allegations in Paragraph 18.

19.   Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 19 and denies them on that basis.

20.  To the extent that the allegations in Paragraph 20 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 20.

21.  To the extent that the allegations in Paragraph 21 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 21.

22.  Defendant denies the allegations of Paragraph 22.

23.  To the extent that the allegations in Paragraph 23 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 23.

24.  Defendant denies the allegations of Paragraph 24.

25.  Defendant denies the allegations of Paragraph 25.

26.  Defendant denies the allegations of Paragraph 26.

## CAUSES OF ACTION

## COUNT 1

27.  Defendant denies the allegations of Paragraph 27.

28.  Defendant denies the allegations of Paragraph 28.

29.  Defendant denies the allegations of Paragraph 29.

30.  Defendant denies the allegations of Paragraph 30.

31.  Defendant denies the allegations of Paragraph 31.

32.  To the extent that the allegations in Paragraph 32 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 32.

33.  To the extent that the allegations in Paragraph 33 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 33.

## COUNT II

34.  Defendant denies the allegations of Paragraph 34.

35.  Defendant denies the allegations of Paragraph 35.

36.  To the extent that the allegations in Paragraph 36 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 36.

37.  Defendant denies the allegations of Paragraph 37.

## COUNT III

38.  To the extent that the allegations in Paragraph 38 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 38.

39.  To the extent that the allegations in Paragraph 39 are legal arguments or conclusions, they require no answer. To the extent that an answer may be required, Defendant denies the allegations in Paragraph 39.

COUNT IV

40.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 40 and denies them on that basis.

41.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 and denies them on that basis.

42.     Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 44 and denies them on that basis.

43.  Defendant denies the allegations of Paragraph 44.

**<u>AFFIRMATIVE DEFENSES</u>**

**FIRST DEFENSE**

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**SECOND DEFENSE**

Plaintiff has unreasonably delayed in bringing the claims set forth in the Complaint, despite admitting having knowledge of such facts, and Defendants have been prejudiced by this delay on the part of Plaintiff so as to bar the claims for relief by Plaintiff.

**THIRD DEFENSE**

Plaintiff, by their own conduct, has waived one or more of its claims alleged in the Defendant.

**FOURTH DEFENSE**

Plaintiff's loss, damage, or injury, if any, was caused by the actions, inactions or omissions of non-parties.

**FIFTH DEFENSE**

Plaintiff is estopped and barred from obtaining the relief requested in the Complaint. The Complaint and each and every claim contained therein are barred by reason of acts, omissions, representations, and courses of conduct by Plaintiff

by which Defendant was led to rely to its detriment, thereby barring relief under the doctrine of equitable estoppel under any cause of action asserted by Plaintiff.

### SIXTH DEFENSE

Plaintiff acquiesced to Defendant's use of one or more of its alleged marks and is barred from bringing these claims.

### SEVENTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### EIGHTH DEFENSE

The conduct of Defendant or any conduct that could be attributed to Defendant has no likelihood of causing confusion to the general public or the consumers to whom Plaintiff's products and/or services are marketed.

### NINTH DEFENSE

Plaintiff have failed to mitigate their damages.

### TENTH DEFENSE

Plaintiff's conduct as it related to the subject matter of this action was and is equitable as to Defendant, and as such Plaintiff are barred from any relief relating to the actions of Defendant under the doctrine of unclean hands.

### ELEVENTH DEFENSE

Defendant is excused from any and all liability under the alleged claims for relief because at all material times Defendant acted in good faith and conducted all material transactions in good faith.

### TWELFTH DEFENSE

Plaintiff ratified the alleged actions, if any, of Defendants which occurred and are thereby barred from recovery.

### THIRTEENTH DEFENSE

Plaintiff lacks standing to bring these claims against Defendants.

### FIFTEENTH DEFENSE

One or more third parties are responsible for all or part of Plaintiff's damages.

### SIXTEENTH DEFENSE

Plaintiff's fail to state a claim for violation of the California Business and Professions Code section 17200 et. seq. because it has not pleaded a valid "unlawful" act by Defendant.

### SEVENTEENTH DEFENSE

Plaintiff are seeking to recover damages that are completely speculative in nature.

### EIGHTEENTH DEFENSE

Plaintiff's claims are barred on the basis of Judicial Estoppel on the grounds that Plaintiff argued to the United States Patent and Trademark Office that the marks "Baddies" and "Only Baddies" were not confusingly similar.

### NINETEENTH DEFENSE

Plaintiff's trademark registration was obtained fraudulently in that Plaintiff made false material statements to the USPTO in its application to have the mark registered and on that basis should be cancelled.

### TWENTIETH DEFENSE

Defendant began airing their television series prior to Plaintiff's use of their trademark in interstate commerce.

### ADDITIONAL DEFENSES

Defendant reserves the right to assert additional defenses based on information learned or obtained through discovery or further investigation

### PRAYER FOR RELIEF

WHEREFORE, Defendant pray that this Court:

1.     Enter judgment in their favor on each and every claim set forth in the Complaint.

2.     Dismiss the Complaint with prejudice.

3.     Award Defendant their costs and attorneys' fees in this action; and

4.     Award such other and further relief as this Court may deem just and appropriate.

Dated: January 8, 2024                    Law Office of Larry Zerner


By:  /s/ Larry Zerner
       Larry Zerner
       Attorney for Defendant Zeus Networks, LLC


## DEMAND FOR TRIAL BY JURY

Defendant pursuant to Rule 38 of the Federal Rules of Civil Procedure hereby demand trial by jury of all issues so triable in the present action.


By:  /s/ Larry Zerner
       Larry Zerner
       Attorney for Defendant Zeus Networks, LLC

## COUNTERCLAIMS FOR DECLARATORY RELIEF

### JURISDICTION AND VENUE

1. Jurisdiction is pursuant to FRCP 13.

### THE PARTIES

2. Counter-Claimant Zeus Networks, LLC ("Zeus") is a Delaware limited liability company, with its principal place of business located in Los Angeles, California.

3. Counter-Defendant International Content Creators, Inc. ("ICC") is, upon information and belief, a Nevada corporation, with its principal place of business in Las Vegas, Nevada.

### FACTS COMMON TO ALL THE CLAIMS FOR RELIEF

4. On November 3, 2023, ICC sued Zeus for, *inter alia,* federal and state claims of Trademark Infringement.

5. The gravamen of ICC's lawsuit is that it is the owner of registered trademark number 6625381 for the mark "Only Baddies" in Class 38. This trademark registered by ICC is **not** for use as a television series.

6. ICC alleges that Zeus' use of the term Baddies combined with other terms such as "Baddies ATL" and "Baddies South" in connection with a number of television series aired by Zeus, somehow is confusingly similar to ICC's registered trademark despite the fact that the marks are not similar and are not used for the same goods and services.

7. ICC also alleges that on July 15, 2022, they filed an application for a trademark registration for "Only Baddies" (Application No. 97504511) in class 41 **after** Zeus aired seasons of its television series "Baddies ATL" and "Baddies South."

8. In this July 15, 2022 application, ICC alleged that it was using the "Only Baddies" mark in interstate commerce in connection with ongoing reality-based television programs since September 19, 2020. However, there was no "Only

Baddies" television series existing as of September 19, 2020, and as of this date, there is still no "Only Baddies" television series" produced by ICC.

9.  ICC's claim to be using the "Only Baddies" mark in connection with a television series from September 19, 2020 appears to be a fraudulent statement and would be grounds to have the trademark application cancelled, should it ripen into a registered mark.

10. However, it does not appear that ICC's July 15, 2022 application will ripen into a registration.  In response to ICC's July 15, 2022 Trademark Application, the USPTO, on May 8, 2023, sent ICC a non-final office action, refusing registration of the "Only Baddies" application, not because of Zeus, but because a company called "Baddie, Inc." had registered the mark "Baddie" in Class 42 in 2018 (Registration No. 5578212) and the USPTO examining attorney determined that ICC's "Only Baddies" application was confusingly similar to the "Baddie" application.

11. In response to the Office Action, ICC, through its attorney, Rexford Brabson (who is also representing ICC in this action), filed a response to the USPTO in which ICC took the position that the marks "Only Baddies" and "Baddie" **are not** confusingly similar.

12. Specifically, the response states, in pertinent part, "The mere fact that both marks contain the common working, BADDIE, does not in itself create a likelihood of confusion.  This is true even if the trademarks at issue are used in relation to identical goods and services."

13. ICC further argued that "Only Baddies" and "Baddie" are different because "[A]ny variation, even the difference in plurality of BADDIE, is enough to differentiate the marks.  Additionally, because consumers are generally more inclined to focus on the first word, [Only Baddies] is further virtually distinguishable by its first word, ONLY."  A true and correct copy of ICC's Response to the USPTO Office Action (without exhibits) is attached hereto as Exhibit 1.

14. ICC's has taken the position before the USPTO that the marks "Only Baddies" and "Baddie" are not confusingly similar.  Accordingly, the position that it has taken in this lawsuit, that Zeus's use of "Baddies ATL" and "Baddies South" is confusingly similar to "Only Baddies" is untenable.

15. Accordingly, Zeus seek a declaratory judgment from this Court determining that Zeus' has not infringed any trademark rights belonging to ICC.

## FIRST CAUSE OF ACTION

### Declaratory Relief

16. Counterclaimants repeat and incorporate by reference their responses in paragraph 1-15.

17. An actual controversy has arisen and now exists between Zeus and ICC in that ICC alleges, and Zeus denies,  the following:

    a. That ICC has the exclusive right to the use the term "Baddie" with other words in connection with a television series.

    b. That Zeus' use of the word Baddies in conjunction with other words (e.g., Baddies South, Baddies ATL) is confusingly similar to the term "Only Baddies."

    c. That ICC has been using the term "Only Baddies" in conjunction with the production and airing of television series.

18. Zeus desires a judicial determination of the respective rights of ICC to use the term Baddies in conjunction with television series and a judicial determination that Zeus is not infringing ICC's trademarks.

## PRAYER FOR RELIEF

Wherefore, Zeus prays for relief as follows:

1. That the Court enter judgment in favor of Zeus and against ICC on the Counterclaims.

2. That the Court enter Judgment that Zeus has not infringed ICC's trademarks.

3. That the Court award Zeus its cost and attorney's fees.

Dated: January 8, 2024                    Law Office of Larry Zerner


                                          By:  /s/ Larry Zerner_____
                                             Larry Zerner
                                             Attorney for Defendant Zeus Networks,
                                             LLC


### DEMAND FOR TRIAL BY JURY

Defendant pursuant to Rule 38 of the Federal Rules of Civil Procedure

hereby demand trial by jury of all issues so triable in the present action.


                                          By:  /s/ Larry Zerner_____
                                             Larry Zerner
                                             Attorney for Defendant Zeus Networks,
                                             LLC

# EXHIBIT 1

IN THE UNITED STATES PATENT & TRADEMARK OFFICE
WASHINGTON, D.C. 22313

| | |
|---|---|
| In re application of: | ) |
| | ) |
| INTERNATIONAL CONTENT | ) |
| CREATORS, INC. | ) |
| | ) |
| Ser. No. 97504511 | ) Trademark Examiner: Anicka S. Purath |
| | )    Law Office: 101 |
| Filed: July 15, 2022 | ) |
| | ) |
| Mark:   ONLY BADDIES | ) |
| _____ | ) |

RESPONSE TO OFFICE ACTION
YOUR MAILING DATE: May 8, 2023

October 26, 2023

Commissioner For Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

Dear Examiner Purath,

In response to the Examiner's Office Action dated May 8, 2023, the Applicant submits the following

information:

The Examining Attorney refused Applicant's ONLY BADDIES mark ("Applicant's Mark" or the

"Application") on the grounds that the trademark is likely to be confused with Registrant's BADDIE mark

("Registrant's Mark") due to their similarities in appearance and sound, and the relatedness of the services. For

the reasons discussed below and because the Applicant has put forth a proposal to amend their trademark

description by eliminating all their classes except class 041. The Applicant is electing to remove the majority

of its previously listed goods/services. The Applicant will now specifically holds their services as

"Entertainment services in the nature of development, creation, production, distribution, and post-production

of television shows; entertainment services in the nature of an ongoing reality based television program;

Entertainment services in the nature of creation, development, and production of television programming" all

falling under Class 041.  Furthermore, it's important to note the timeline of usage in commerce for both marks.

The Applicant began using their mark in commerce on 09/19/2020, which predates the Registrant's first use in

1

commerce on 05/16/2021. This establishes the Applicant's priority in the marketplace, underscoring their precedence and earlier association with the mark in the eyes of the consuming public. Therefore, Applicant contends that there is no likelihood of confusion, and respectfully requests that the refusal be withdrawn, and the Application proceed to immediate publication.

I.      **Sections 2(d) Refusal**

    A.      **Argument**

            i.   ***Based on an Analysis of the DuPont Factors, ONLY BADDIES and Registrant's BADDIE Mark Are Unlikely to Be Confused***

The determination of the issue of likelihood of confusion is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in *In re E. I. DuPont de Nemours & Co.*, 177 USPQ 563 (CCPA 1973). These factors are:

1.  The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression.

2.  The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

3.  The similarity or dissimilarity of established, likely-to-continue trade channels.

4.  The conditions under which and buyers to whom sales are made, i.e., "impulse" vs. careful, sophisticated purchasing.

5.  The fame of the prior mark.

6.  The number and nature of similar marks in use on similar goods.

7.  The nature and extent of any actual confusion.

8.  The length of time during and the conditions under which there has been concurrent use without evidence of actual confusion.

9.  The variety of goods on which a mark is or is not used.

10. The market interface between the applicant and the owner of a prior mark.

11. The extent to which applicant has a right to exclude others from use of its mark on its goods.

2

12. The extent of potential confusion.

13. Any other established fact probative of the effect of use.

*DuPont* at 567. Not all of the *DuPont* factors may be relevant or of equal weight in a given case and "any one of the factors may control a particular case." *In re Majestic Distilling Co., Inc*., 315 F.3d 1311, 1315, 65 U.S.P.Q.2d 1201, 1204 (Fed. Cir. 2003), *citing In re Dixie Rests. Inc*., 105 F.3d 1405, 1406-07, 41 U.S.P.Q.2d 1531, 1533 (Fed. Cir. 1997). Applicant addresses *DuPont* below:

      1.  <u>There is No Likelihood of Confusion Because ONLY BADDIES and Registrant's BADDIE Mark are Dissimilar in Appearance, Sound, Connotation, and Commercial Impression</u>

The first relevant *DuPont* factor considers the similarities and dissimilarities of the marks in appearance, sound, connotation, and commercial impression. *See Palm Bay Imps*., *Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005). "The general rule is that marks should be regarded in their entirety. . . ." *Puerto Rico Distilling* Co. *v. Coca-Cola* Co. 120 F.2d 370, 49 U.S.P.Q. 660 (C.C.P.A. 1941).

      a.  *Applicant's ONLY BADDIES Mark is Distinguishable from Registrant's BADDIE Mark in its Appearance*

Applicant's ONLY BADDIES Mark is visually distinct from Registrant's BADDIE Mark. The mere fact that both marks contain the common wording, BADDIE, does not in itself create a likelihood of confusion. This is true even if the trademarks at issue are used in relation to identical goods and services. *See Champagne Louis Roederer S.A. v. Delicato Vineyards,* 148 F.3d 1373, 4714 U.S.P.Q.2d 59 (Fed. Cir. 1998) (not confusingly similar: CRISTAL and CRYSTAL CREEK, both for alcoholic beverages); *J. Wiss & Sons Co. v. Gee Whiz Tool Corp.,* 364 F.2d 910, 150 U.S.P.Q. 583 (6th Cir. 1966) (not confusingly similar: WIZZ and GEE WHIZ, both for garden tools); *In re Farm Fresh Catfish Co.*, 231 U.S.P.Q. 495 (T.T.A.B. 1986) (not confusingly similar: BOBBER for fish and CATFISH BOBBERS for restaurant services); *In re Hearst Corp.,* 982 F.2d 494, 25 U.S.P.Q. 2d (BNA) 1238 (Fed. Cir. 1992) (not confusingly

3

similar: VARGAS and VARGA GIRL, both for calendars).

Furthermore, Applicant's ONLY BADDIES Mark is improperly dissected. A trademark "should not be split up into its component parts and each part then compared with parts of the conflicting mark to determine the likelihood of confusion. It is the impression which the mark *as a whole* creates on the average reasonably prudent buyer and not the parts thereof which is important." McCarthy, *supra* at § 23:15 (emphasis added). It is a violation of this "anti-dissection" rule to focus upon the "prominent" feature of a mark and not upon the mark in its totality. *Id; see Franklin Mint Corp. v. Master Mfg. Co*., 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion"). Rather, each case requires consideration of the effect of the entire mark including any term in addition to that which closely resembles the opposing mark. *Rockwood Chocolate Co. v. Hoffman Candy Co*., 372 F.2d 552, 152 U.S.P.Q. 599 (C.C.P.A. 1967). Therefore, any variation, even the difference in plurality of BADDIE, is enough to differentiate the marks. Additionally, because consumers are generally more inclined to focus on the first word, Applicant's Mark is further visually distinguishable by its first word, ONLY. *See Palm Bay Imps.,* 73 USPQ2d at 1692 ("VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *In re Integrated Embedded*, 102 USPQ2d 1504, 1513 (TTAB 2016) ("[T]he dominance of BARR in [a]pplicant's mark BARR GROUP is reinforced by its location as the first word in the mark."); *Presto Prods., Inc. v. Nice-Pak Prods., Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered" when making purchasing decisions). In a proper comparison of the marks in their entireties, Applicant's ONLY BADDIES is significantly different from Registrant's BADDIE.

Moreover, although both Applicant and Registrant claim rights in plain text marks, both use their marks in the stylized manners pictured here:

4

   

While a standard character mark covers "all reasonable manners" of display, where it would be unreasonable to assume that the word mark owner would adopt the same design as the cited mark, the marks are not improperly similar. *In re White Rock Distilleries, Inc.*, 92 U.S.P.Q.2d 1282, 1284 (T.T.A.B. 2009) (finding no likelihood of confusion between VOLTA in standard characters and TERZA VOLTA (and design), both for alcoholic beverages). In this case, the differing fonts, stylizations, and placements used by each party evidence a substantial difference in branding, further enabling consumers to distinguish between the marks. Additionally, the inclusion of the word "ONLY" before "BADDIES" in the Applicant's mark. This is not a mere cosmetic addition; it carries significant weight in shaping the perception of the mark.

The term "ONLY" is inherently definitive and authoritative. It suggests that there is nothing else quite like what's being described. In the commercial world, it often implies exclusivity, superiority, or a unique offering that stands apart from the crowd. For instance, when we hear phrases like "only choice" or "only option," we understand them to mean that no other alternatives match up to the item or service in question.

Now, juxtapose this implication of exclusivity with the term "BADDIES." "ONLY BADDIES" doesn't merely suggest a group of "baddies." Instead, it seems to convey that this is the definitive, unparalleled group or offering of "baddies" – perhaps the best, most authentic, or most exclusive. It hints at a level of prestige or distinction in the realm of "baddies."

On the other hand, the term "BADDIES" on its own, as used by the Registrant, is broader and more generic. Without the prefix "ONLY," it lacks the assertion of exclusivity or singularity. It might refer to any group or collection of "baddies" without suggesting any particular standing or distinction among them.

---

[1] Applicant is the owner of the U.S. Trademark Reg. No. 6625381; *See also* Exhibit A
[2] Registrant's Specimen submitted on September. 12, 2017, for U.S. Trademark Reg. No. 5578212; *See also* Exhibit B

5

b. *Applicant's ONLY BADDIES Mark is Distinguishable from Registrant's BADDIE Mark in its Sound*

Applicant's ONLY BADDIES Mark is also aurally distinct from Registrant's BADDIE Mark. BADDIE is a single word of two (2) syllables, while ONLY BADDIES is two (2) words comprised of four (4) syllables. *See Hornady Manufacturing Co. v. Doubletap, Inc.*, 746 F.3d 995 (10th Cir. 2014) (no likelihood of confusion between words containing a different number of syllables). Moreover, the addition of the word ONLY adds a new aural component, which changes both the sound and cadence of the phrases. *Universal Money Ctrs., Inc. v. Am. Tel. &Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994) (finding dissimilarity where "the marks have different sounds and cadences.").

c. *Applicant's ONLY BADDIES Mark is Distinguishable from Registrant's BADDIE Mark in its Connotation and Commercial Impression*

Differing connotations themselves can be determinative, even where identical words with identical meanings are used. *Revlon, Inc. v. Jerrell, Inc.,* 713 F. Supp. 93, 11 U.S.P.Q. 2d 1612, 1616 (S.D.N.Y. 1989) (No likelihood of confusion because the meaning and connotation of the marks THE NINES and INTO THE NINETIES are not related. THE NINES suggests the number nine, or nine of something in a group. INTO THE NINETIES is a reference to the decade of the 1990's, and more generally the future; Plaintiff's motion for preliminary injunction is denied.); citing *Clarks of England, Inc. v. Glen Shoe Company*, 465 F. Supp. 375, 379, 209 USPQ 852, 854-55, (S.D.N.Y. 1960) (TREK and STAR TREK for shoes; TREK connotes hiking across the Himalayas; STAR TREK connotes space travel.)

"Baddie" is defined as a bad person or thing. *See Exhibit C.* "Baddie" is slang for a female who can hold her own and care for herself. *See Exhibit D.* Women defined as a "baddie" are likely attractive and independent.

Applicant's ONLY BADDIES mark invokes the idea that the brand is an exclusive group consisting solely of attractive, independent women. Through its services, consumers can expect to see and interact with a variety of women who are looking to profit from their appearances. In addition to exclusivity, "only"

6

also creates the impression that the content creators are of the elite or are specifically selected to be considered a "baddie." On the other hand, Registrant's BADDIE Mark suggests an entirely different connotation and commercial impression. BADDIE is a single word in a singular format, which leads one to believe that the brand and its services give consumers access to view one specific attractive woman. Furthermore, without "only" or a similar word, exclusiveness and elitism are not present.

2. Underline There is No Likelihood of Confusion Because ONLY BADDIES and Registrant's BADDIE Mark Offer Distinguishable Services

The Applicant puts forth a proposal to amend their trademark description by eliminating the majority of its previously listed goods/services. The Applicant will now specifically holds their services as "Entertainment services in the nature of development, creation, production, distribution, and post-production of television shows; entertainment services in the nature of an ongoing reality based television program; Entertainment services in the nature of creation, development, and production of television programming" all falling under Class 041.  This amendment further delineates and differentiates the Applicant's services from those of the Registrant. By removing this class, this step underscores the Applicant's commitment to ensuring clear distinctions between the two entities in the market landscape. Additionally, there is no per se rule that goods or services sold in the same field or industry are similar or related for purposes of likelihood of confusion. *See Cooper Industries, Inc. v. Repcoparts USA, Inc.*, 218 USPQ 81, 84 (TTAB 1983); *Lloyd's Food Products, Inc. v. Eli's, Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993) (reversing likelihood of confusion cancellation of LLOYD'S for barbecued meats based on LLOYD's for restaurant services).

Through a subscription, content creators can use Applicant's ONLY BADDIES interactive computer services to obtain more opportunities to grow their following and expand their brand. *See* Exhibit E. ONLY BADDIES is a medium where creators can interact with their followers via video chats, direct messages, private phone calls, and text messages while managing online stores to sell their products and services. Additionally, followers can pay a monthly subscription to access exclusive content the creators provide.

7

In contrast, Registrant's services are a temporary, non-interactive website service "that gives computer users the ability to upload, exchange and share photos, videos, and video logs." Unlike ONLY BADDIES description, Registrant's services do not include an interactive component. Instead, Registrant describes its services with repetitive statements of non-downloaded software for transmitting, uploading, sharing, and modifying photographs and videos. Rather than being a tool for content creators to develop their brand and encourage entrepreneurship, Registrant's services are a simple medium for photo and video sharing.

### 3. There is No Likelihood of Confusion Because Applicant Markets to Sophisticated, Careful Consumers

"When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion." *Checkpoint Sys. v. Check Point Software Tech,* 269 F.3d 270, 284 (3d Cir. 2001). Among the considerations for determining the sophistication of and care exercised by consumers of a particular product are the relative cost of the goods, the importance of the goods, the relevant purchasing class, and the effort needed to purchase the products. *Versa Prods. Co. v. Bifold Co.,* 50 F.3d 189, 204 (3d Cir. 1995).

As an interactive website that caters to content creators looking to increase their following and develop their brand, Applicant's ONLY BADDIES markets to a sophisticated, knowledgeable consumer base. Finding the right platform to use significantly contributes to a brand's success, which is why content creators carefully consider their options before making a final decision. They evaluate the website's subscription costs and plans; the processing fees; the maximum amount they can charge followers; and the fame and foot traffic of the website. For example, looking at ONLY BADDIES's competitor, *OnlyFans*, content creators will consider the following differences:

| | ONLY BADDIES | | OnlyFans[3] |
|---|---|---|---|
| **Subscription** | $39.99 per week | | None |

---

[3] *See* Exhibit F & G

| Processing Fees | 5% of the total amount charged. | 15% of the total amount charged. | 20% of the revenue |
|---|---|---|---|
| Maximum Tip Amount | No Maximum | No Maximum | $100 for new users |
| | | | $200 for users who have been on the platform for more than 4 months. |
| Maximum Charge Per Video Chat | $150 | $250 | N/A |
| Maximum Charge for Private Messages | N/A | N/A | $100 |
| Maximum Charge for Paid Posts | No Maximum | No Maximum | $50 |
| Maximum Amount a Follower Can Spend Per Day | No Maximum | No Maximum | $500 |
| Maximum Amount Content Creator Can Charge Followers for Subscriptions | No Maximum | No Maximum | Subscription Price: $50 |
| | | | Bundle Price: $250 |

While some of Registrant's consumers may be content creators, Registrant's non-interactive computer services limit their ability to monetize their brand development, making it unlikely that content creators would turn to the BADDIE website for similar purposes. Additionally, this demographic, often characterized by their meticulous research habits and discerning selection criteria, tends to invest time in understanding the nuances of what they're signing up for. Their innate inclination to differentiate between platforms and services means they're less likely to be easily swayed or confused by superficial similarities. Given this heightened degree of care and attention to detail, the actual risk of them confusing the Applicant's services with those of the Registrant diminishes considerably. As such, Applicant's consumers can be expected to exercise a degree of care in their decision-making habits that diminishes, if not entirely prevents, potential confusion.

9

4.   There is No Likelihood of Confusion Because any Potential Confusion is de Minimus

Only when a situation suggests that there is a *practical* likelihood of such confusion, mistake or deception as would cause damage does the balance tip in favor of the registrant. *In re Massey-Ferguson Inc.*, 222 USPQ 367, 368 (TTAB 1983) *(quoting Witco Chem. Co. v. Whitfield Chem. Co.,* 164 USPQ 43, 44 (CCPA 1969), for the proposition that, "[w]e are not concerned with mere theoretical possibilities of confusion, deception or mistake or with de minimis situations but with the practicalities of the commercial world, with which trademark laws deal."). Mere speculation cannot provide the basis for a finding of confusion; the standard must be greater than a scintilla of a possibility.

For this factor to favor Registrant, a *probability* of confusion, not a mere possibility, must exist. *See Gruner + Jahr*, 991 F.2d at 1077; *see also Estee Lauder Inc. v. Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir. 1997) ("Likelihood of confusion means a probability of confusion; `it is not sufficient if confusion is merely "possible."'") (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23:2, at 23-10 to -11 (1996)). A probability of confusion may be found when a large number of purchasers will likely be confused as to the source of the goods in question. *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998). In the present case, no actual confusion is known or has been shown. Furthermore, any potential confusion is unlikely given the differences in the marks and the services. As such, this factor must either favor Applicant, or be found neutral.


5.   The Remaining DuPont Factors Are Minimal

The current proceeding contains no evidence regarding the remaining factors. Indeed, not all *DuPont* factors are relevant or of similar weight in every case. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1315 (Fed. Cir. 2003). Where there is neither evidence nor argument regarding a factor, the Board frequently finds it to be neutral, and Applicant respectfully requests the same treatment in the present case. *In re Waverly Inc., 27 USPQ2d 1620, 1623 (T.T.A.B. 1923)* (recognizing the significance of consistent treatment by the TTAB in instances concerning registrability of trademarks).

10

### ii.  *Registrant's BADDIE Mark Does Not Appear to Be in Use*

Based on its research, Applicant believes Registrant's BADDIE Mark is not in use. The specimens Registrant provided during the prosecution of its application display URLs for its Instagram[4] and website[5]; However, the URLs do not lead to any website, and the Instagram account does not exist[6]. Furthermore, the internet archive website, *WayBack Machine*, shows a lack of activity on Registrant's website, www.baddienow.com.[7] The last activity was recorded on November 26, 2021.[8]

Applicant acknowledges that the Examining Attorney lacks the authority to cancel registrations; nevertheless, Applicant would like this observation and its evidence to be on the record.

## II.    <u>Pending Applications</u>

Examiner has also stated that the filing dates of the pending U.S. Application Serial No. 97392500 for BADDIES ONLY and U.S. Application Serial No. 97451431 for BADDIES precede Applicant's filing date and, therefore, could cause Applicant's Mark to be refused under Trademark Act Section 2(d) if one or more of the applications register. It's important to note the timeline of usage in commerce for both marks. The Applicant began using their mark in commerce on **09/19/2020**, which predates U.S. Application Serial No. 97392500 for BADDIES ONLY an Intent to Use application and U.S. Application Serial No. 97451431 for BADDIES first use in commerce on 05/16/2021. In the event of registration, Applicant presents the following arguments against any potential suspension of Applicant's application.

### A.  <u>BADDIES ONLY</u>

---

[4] *See* Exhibit H
[5] *See* Exhibit B
[6] *See* Exhibit I & Exhibit J
[7] *See* Exhibit K
[8] *Id.*

11

     *i.   Based on an Analysis of the DuPont Facts, ONLY BADDIES and the BADDIES ONLY Mark Are Unlikely to Be Confused*

     1.  <u>There is No Likelihood of Confusion Because Applicant's ONLY BADDIES Mark and the BADDIES ONLY Mark are Dissimilar in Appearance and Sound.</u>

As stated above in Section I.A.i.1.a, it is a violation of the "anti-dissection" rule to focus on the "prominent" feature of a mark and not on the mark in its totality. McCarthy at § 23:15; *see Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion"). For this reason, the proper comparison is the marks in their entirety.

Applicant acknowledges that both marks contain "only" and "baddies." However, consumers are likely to focus on the first word, making each mark distinguishable by its first word. *See Palm Bay Imps.,* 73 USPQ2d at 1692. This difference in word arrangement also results in the Applicant's ONLY BADDIES Mark and the BADDIES ONLY Mark being distinct in sound. Compared to their entireties, Applicant's ONLY BADDIES Mark is visually and aurally distinguishable from the BADDIES ONLY Mark.

Please take note that the arguments and rationales presented in the preceding section are equally applicable here. It is essential to recognize that the assertions and foundations established above are directly relevant and should be referenced accordingly in this section.

     2.  <u>There is No Likelihood of Confusion Because Applicant's ONLY BADDIES Mark and the BADDIES ONLY Mark Offer Distinguishable Goods and Services</u>

Applicant's ONLY BADDIES Mark is further distinguishable from the BADDIES ONLY Mark by each mark's different and unrelated goods and services. The Applicant is amending its application to more narrowly define its goods and services. The Applicant is electing to remove the majority of its previously listed goods/services. The Applicant will now specifically holds their services as "Entertainment services in the nature of development, creation, production, distribution, and post-production of television shows; entertainment services in the nature of an ongoing reality based television program; Entertainment services in the nature of

12

creation, development, and production of television programming" all falling under Class 041. The Applicant believe this revision offers a precise and clear depiction of the Applicant's offerings and hope this addresses the concerns raised in the office action. Applicant now solely lists their services in class 041. The services are primarily related to its interactive website, which acts as a medium for content creators to connect with their followers to develop their brand and monetize their content. In contrast, the BADDIES ONLY Mark lists its goods in Class 025 for "Headwear; Swimsuits Bottoms as clothing; Tops as clothing." Not only are each mark's goods and services listed in different Classes, but they are also unrelated and do not overlap. None of the Applicant's services include anything related or similar to clothing. Instead, its descriptions include references to computers, software, and/ or digital media.

### B. **BADDIES**

The application for BADDIES (U.S. Application Serial Nos. 97451431) was abandoned on September 22, 2023 and please take note that the arguments and rationales presented in the preceding section are equally applicable. It is essential to recognize that the assertions and foundations established above are directly relevant and should be referenced accordingly in this section.

### III.   **Conclusion**

For the reasons above, Applicant's trademark is not likely to be confused with Registrant's Mark or any of the listed pending applications. Therefore, the Applicant respectfully requests that the Examining Attorney allow Applicant's Application for the mark ONLY BADDIES to proceed to publication. If, for some reason, Examiner continues to believe that the present application is not in condition for publication, Examiner is respectfully requested to call Applicant's attorney at (858) 220-9263 to discuss any possible amendments of the like which places the case in condition for publication or arrange an Examiner's amendment to put the case in condition for publication. Thank you for your consideration.

Respectfully submitted,

13

/s/ Jorge M. Franco, Esq.

Rexford Brabson
Jorge M. Franco
T-Rex Law, P.C.
Attorneys for Applicant
7040 Avenida Encinas #104-333
Carlsbad, CA 92011

14